IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT WILSON,

    Plaintiff,

v.                                                     Civil Action No. GLR-18-2175

WEXFORD HEALTH SOURCES, INC.,[1]
DR. MAHBOOBEH MEMARSADEGHI, M.D.,
DR. MAKSED CHOUDRY, M.D.,
DR. AVA JOUBERT, M.D.,
DR. CLAYTON RAAB, M.D.,
PHYSICIAN ASSISTANT STEPHANIE CYRAN,
PHYSICIAN ASSISTANT RUTH PINKNEY,

    Defendants.

***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Wexford Health Sources, Inc., Dr. Mahboobeh Memarsadeghi, M.D., Dr. Maksed Choudry, M.D., Dr. Ava Joubert, M.D., Dr. Clayton Raab, M.D., Physician Assistant Stephanie Cyran, and Physician Assistant Ruth Pinkney's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 17).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local

---

[1] The Clerk shall amend the docket to reflect the complete and proper spelling of Defendants' names.

[2] Also pending are Plaintiff Robert Wilson's Motion for a Temporary/Permanent Injunction (ECF No. 19), Motion for Summary Judgment or a Court Appointed Counsel or a Permanent Injunction (ECF No. 20), and "Motion for Permanent Injunction/Counsel Conclusion" (ECF No. 23). Because the Court will grant Defendants' Motion, the Court will deny Wilson's motions as moot.

Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant Defendants' Motion, which it construes as a motion for summary judgment.

## I. BACKGROUND[3]

This section 1983 lawsuit stems from Wilson's contention that he received inadequate medical care at Eastern Correctional Institution ("ECI") in Westover, Maryland.[4] Wilson's significant medical history includes excision of a hiatal hernia, right eye blindness, impaired vision in the left eye, left ankle and heel pain, hypertension, hepatitis C ("HVC"), heartburn, and asthma. (Defs.' Mot. Dismiss Mot. Summ. J. ["Defs.' Mot."] Ex. 1 ["Medical Records"] at 3, ECF No. 17-4)[5]; see also Clem Aff. ¶ 4, ECF No. 17-5). Wilson alleges that he was denied an orthopedic consultation by Dr. Choudry on April 30, 2015; by Dr. Joubert on June 13, 2015 and November 23, 2015; and by Dr. Memarsadeghi on September 28, 2015, August 31, 2016, and February 1, 2017. (1st Suppl. Compl. at 1, ECF No. 7).

Defendants dispute Wilson's claim that he received inadequate medical treatment and state the following: On April 2, 2015, Wilson submitted a sick call slip complaining about his vision, but he did not mention his foot or request a consultation with an orthopedist. (Medical Records at 2). On April 30, 2015, Dr. Choudry treated Wilson at the

---

[3] Unless otherwise noted, the Court takes the following facts from Wilson's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[4] Although now housed at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, Wilson was incarcerated at ECI during the time relevant to the Complaint.

[5] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

chronic care clinic for recurring abdominal pain and vomiting. (Id. at 3–6). During that visit, Dr. Choudry noted Wilson's complaint of left foot pain and his desire to see a podiatrist. (Id. at 3). Dr. Choudry determined that the foot pain was chronic in nature and prescribed Neurontin for the pain. (Id. at 4). Later that day, Wilson submitted a sick call slip asking a doctor to renew his high calorie diet. (Id. at 7).

On September 24, 2015, Wilson complained of abdominal pain and rectal bleeding. (Id. at 14). On September 28, 2015, he saw Dr. Memarsadeghi and complained of abdominal pain and diarrhea but did not request a consultation with an orthopedist. (Id. at 15–16). He went to the chronic care clinic again on November 23, 2015, where he saw Dr. Joubert and complained of abdominal pain, vomiting, heartburn, nausea, and weight loss. (Id. at 18). He did not ask to see an orthopedist during that visit.

According to a May 9, 2016 X-ray report, Wilson had a small osteophyte projection[6] on his heel bone, possibly caused by an old injury. (Id. at 21). Dr. Memarsadeghi reviewed the X-ray results with Wilson on August 31, 2016 during Wilson's chronic care visit. (Id. at 22–24). Wilson told Dr. Memarsadeghi that steroid injections did not help the pain. (Id. at 22). Dr. Memarsadeghi told Wilson that his current dosages of Indomethacin[7] could not be increased. (Id.). Wilson did not request consultation with an orthopedist. (Id. at 22–24).

---

[6] Osteophytes, commonly referred to as "bone spurs," are bony projections that often develop in bone joints as a result of osteoarthritis. See Bone Spurs, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bone-spurs/symptoms-causes/syc-20370212 (last visited Jan. 22, 2020).

[7] Indomethacin is a nonsteroidal, anti-inflammatory drug used to relieve pain, swelling, and joint stiffness that may be caused by arthritis. Indomethacin, WebMD, https://www.webmd.com/drugs/2/drug-8880-5186/indomethacin-oral/indomethacin-oral/details (last visited Jan. 30, 2020).

During a February 1, 2017 chronic care clinic visit, Dr. Memarsadeghi addressed Wilson's hypertension, asthma, HVC, right eye pain, and abdominal pain and made note of his chronic heel pain. (Id. at 25–28). Dr. Memarsadeghi prescribed Amitriptyline and Glucosamine Chondroitin, a supplement for joint and bone pain. (Id.). Wilson did not request an orthopedic consultation. (Id.).

On January 29, 2018, Physician Assistant ("PA") Stephanie Cyran noted that Wilson's left heel pain developed after a 2012 accident, prior to incarceration, and that the injury required hospitalization and surgical reconstruction, including hardware. (Id. at 29–32). Wilson admitted that he did not follow up as instructed and that his foot did not heal properly, resulting in pain. (Id. at 29). He asked for a prescription for Gabapentin, but that request was denied because neither Gabapentin nor Tramadol were medically necessary for his chronic pain. (Id. at 30).

Dr. Lawrence Manning, an orthopedist, examined Wilson on February 6, 2018. (Id. 37–38). Dr. Manning diagnosed Wilson with chronic arthritis due to the old fracture and prescribed cushioned orthopedic shoes or boots, a cane, and Voltaren gel, which was to be applied twice a day for one month. (Id. at 37). Dr. Manning also noted that a follow-up appointment was appropriate. (Id.).

PA Ruth Pinkney saw Wilson three days later on February 9, 2018. (Id. at 39–43). She noted that Dr. Manning recommended that Wilson use cushioned orthopedic shoes, a cane, and Voltaren gel. (Id. at 39). Pinkney ordered the gel. (Id. at 44). The Voltaren dosage

was lowered on February 21, 2018. (Id. at 46). Wilson received his orthopedic shoes in August 2018. (Clem Aff. ¶ 8).

On March 11, 2018, Wilson began a twelve-week regimen of Epclusa to treat his HVC. (Medical Records at 48). To prevent a potential adverse reaction, Wilson's Prilosec was discontinued. (Id. at 50). During a June 13, 2018 chronic care clinic visit, Dr. Clayton Raab determined that Wilson's HVC infection was cured. (Id. at 62). Dr. Raab also noted that Wilson's report of foot pain "does not make sense and seems rather put on by him," noting "minimal to no findings on exam" and "multiple complaints none of which are able to be discussed or controlled by any form of therapy." (Id.). He renewed Wilson's prescriptions for Bentyl, Voltaren, Prilosec, and Amitriptyline through October 13, 2018, and he recommended that Wilson receive a bottom bunk assignment and cane. (Id. at 64). Wilson received stool cards to test for blood so that he could be evaluated for a possible colonoscopy. (Id.).

At a September 25, 2018 chronic care visit with PA Cyran, Wilson complained that his medical needs were not timely addressed. (Id. at 68). She reviewed Wilson's records with him, reminding Wilson that he "had many assessments with surgeon, specialists, physicians, providers, nursing, mental health since being transferred to [the] current facility," including an in-person "ortho assessment." (Id.). She also noted that Wilson received orthopedic shoes, a cane, and housing in the "special needs medical tier, single cell" because of his vision and ambulatory issues. (Id.).

Wilson, proceeding pro se, sued Defendants on July 16, 2018. (ECF No. 1). Wilson alleges that he was not referred to an outside orthopedic specialist; has not received

orthopedic shoes and steroid injections; never received an endoscopy, colonoscopy, and care for a hernia; and that medications, including Diclofenac Sodium topical gel, Prilosec, and Dicyclomine, were not provided or were provided after a one-month delay. (Compl. at 7–9, ECF No. 1; see also 1st Suppl. Compl. at 2–4). Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on March 4, 2019. (ECF No. 17). Wilson filed an Opposition on March 25, 2019. (ECF No. 22).[8] To date, Defendants have not filed a Reply.

## II. DISCUSSION

### A. Standard of Review

#### 1. Rule 12(b)(6) Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[8] Although captioned as a "Summary Motion to Appoint Counsel" (ECF No. 22), Wilson's filing is more appropriately considered an Opposition to Defendants' Motion, and the Court will construe it as such.

defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

When, as here, the plaintiff is proceeding pro se, the Court will liberally construe the pleadings, which are held to a less stringent standard than pleadings drafted by lawyers. Erickson, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No.

RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### 2. Rule 56 Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**3. Conversion**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the

9

pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

10

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movant's failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, Wilson was on notice that the Court might resolve Defendants' Motion under

Rule 56, because Defendants styled their Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Wilson filed an Opposition to the Motion but did not file a Rule 56(d) affidavit. His Opposition neither directly nor indirectly states that he requires additional discovery or that his opportunity to conduct discovery was somehow inadequate. Accordingly, the Court concludes that both parties had adequate time to conduct discovery and that review of the Motion under Rule 56 is appropriate.

**B.     Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Rubenstein, 825 F.3d at 218. "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). The United States Supreme Court has recognized that denial of medical care constitutes cruel and unusual punishment because "in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without penological purpose." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Gamble, 429 U.S. at 106; see also Kingsley, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–210 (4th Cir. 2017); Rubenstein, 825 F.3d at 218; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (concluding there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Heyer, 849 F.3d at 210 (quoting Iko, 535 F.3d at 241); see also Stansberry, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Brennan, 511 U.S. at 839–40; Kingsley, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" Kingsley, 877 F.3d at 545 (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)); see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual

knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Stansberry, 841 F.3d at 226 (quoting Farmer, 511 U.S. at 842).

At bottom, Wilson's allegations do not rise to the level of an Eighth Amendment violation. The uncontroverted record demonstrates that Wilson's chronic medical conditions have been monitored, and that he has been provided testing, treatment, orthotics, and medications to control his many medical conditions and pain. His health care providers are aware of his ailments and complaints and continue to provide care to alleviate his symptoms. Unfortunately, despite these efforts, Wilson suffers some degree of discomfort and pain due to injury and other chronic, ongoing medical problems. If some of Wilson's complaints were not addressed or if specialized care was not provided as promptly as Wilson might have wanted, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." Gamble, 429 U.S. at 105–06.

Further, a section 1983 claim will fail when it is based upon disagreements between a prisoner and medical providers over proper care "unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v.

Prasse, 428 F.2d 1, 6 (3d Cir. 1970)); accord Lightsey, 775 F.3d at 178 ("[W]e have consistently found such disagreements to fall short of showing deliberate indifference.").

The record before this Court does not demonstrate the existence of any exceptional circumstances which would support a finding of an Eighth Amendment violation. To the contrary, Wilson's difficult-to-manage medical issues have been addressed with conservative care, close monitoring, periodic testing, and special accommodations, including a cane and lower bunk assignment.[9] As such, the Court will enter judgment in favor of Defendants.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 17), which it construes as a motion for summary judgment. A separate Order follows.

Entered this 31st day of January, 2020.

/s/
George L. Russell, III
United States District Judge

---

[9] The Court also notes that despite Wilson's claim that he received inadequate and untimely medical treatment, Wilson's HVC infection was cured.